DOC NO
REC'D/FILED
2013 JUL 19 PM 12: 08
PETER OPPENEER
CLERK US DIST COURT
WD OF WI

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TCYK, LLC,<br>          Plaintiff,<br><br>v.<br><br>DOES 1-99,<br>          Defendants. | Civil Action No. 3:13-CV-00300<br><br>MOTION TO QUASH OR MODIFY SUBPOENA |

**MOTION TO DISMISS AND/OR SEVER COMPLAINT AGAINST DEFENDANT JOHN DOE 71 AND TO QUASH SUBPOENA AGAINST SAME**

I, John Doe No. 71 defendant, respectfully move the court for dismissal or severance of my case in the above captioned matter and motion to quash the subpoena issued to Charter Communications, Inc. as set forth in the Memorandum in Support attached hereto.

Respectfully submitted,

John Doe #3
wijohndoe71@outlook.com
*Pro se*

Dated: July 19th, 2013

**MEMORANDUM IN SUPPORT**

DOC NO
REC'D/FILED
2013 JUL 19  PM 12: 08
PETER OPPENEER
CLERK US DIST COURT
WD OF WI

## I. BACKGROUND

On July 10th, 2013 I received a letter from my ISP regarding a subpoena, which included a copy of the Order Granting Plaintiff's Motion for Early Discovery. The present case is one of several efforts by certain media organizations to establish a business model that relies on questionable allegations of copyright infringement against a large number of individuals to generate substantial profits by extracting settlements from thousands of identified Defendants. In similar cases, when the subpoenaed information is turned over, the defendants, guilty or innocent, receive demand letters. These letters typically demand an exorbitant amount of money for settlement to avoid dealing with threatened lawsuits, and are accompanied by persistent, if not harassing, phone calls. For this reason I respectfully request that I be allowed to file this motion without revealing my personally identifying information.

## II. ARGUMENT

I base this motion on four factors: (A) Improper joinder; (B) The person using a device connected to the internet at any given time is not necessarily the individual to whom the involved Internet Protocol address (IP address) is registered; (C) The Media Access Control (MAC) address will often indicate the wireless router connected to the internet but cannot be relied upon to determine who accessed the internet at any particular time; (D) The inability to identify who actually accessed the internet through the given IP and MAC address introduces an unacceptable degree of uncertainty with regard to the identification of actual wrongdoers.

### A. Improper Joinder

To minimize court costs while suing or threatening to sue as many individuals as possible, Plaintiff s counsel, Keith A. Vogt, is using improper joinders as has been typical in such suits alleging copyright infringement through BitTorrent. Information retrieved from Pacer(http://pacer.gov) indicates that Mr. Vogt filed 6 lawsuits on behalf of TCYK LLC in the Wisconsin Western District Court on April 30, 2013. An additional 6 filings on behalf of TCYK, LLC were made on the same day in Illinois Central District Court, and a further 2 were made in Wisconsin Eastern District Court between May 14, 2013 and May 16, 2013. Altogether, these 14 lawsuits brought by Mr Vogt involve 463 defendants, averaging 33 per case. Thus far in 2013, TCYK, LLC has filed 60 suits in Alabama, Colorado, Illinois, Iowa, Louisiana, Minnesota, Ohio, Tennessee, and Wisconsin against numbered Does using similar tactics. These suits collectively name over 2400 defendants, averaging 40 per case.

Federal courts have previously recognized this improperness of joinder. In a BitTorrent case nearly identical to this one, *CP Productions, Inc. v. Does 1-300* case 1:2010cv06255, the court noted before dismissal:

[I]f the 300 unnamed defendants have in fact infringed any copyrights (something

that this court will assume to be the case, given the Complaint's allegations that so state), each of from the others. No predicate has been shown for thus combining 300 separate actions on the cheap - if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

In the same vein, in the Southern District of New York, Judge Colleen McMahon wrote when dismissing all but one of the defendants (John Doe #1) in Digital Sins, Inc. vs. John Does 1- 245 Case 1: 11-cv-08170-CM, "They are dismissed because the plaintiff has not paid the filing fee that is statutorily required to bring these 244 square lawsuits." In that case the underpayment exceeded $85,000.00.

Commenting on the same case, Judge Milton Shadur wrote:

> This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants - this one seeking the nullification of a February 11, 2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, CP's counsel is ordered to appear in court on March 9, 2011 at 9:00a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

In VPR Internationale vs. Does 1-1017 (case 2:2011cv02068), Judge Harold A. Baker wrote in denying a motion for expedited discovery:

> Plainly stated, the court is concerned that the expedited ex parte discovery is a fishing expedition by means of a perversion of the purpose of and intent of Fed. R. Civ. P. 23.

In Case 1:12-cv-00163-CMH-TRJ, *Document 10*, United States Magistrate Judge Thomas Rawles Jones, Jr. of the United States District Court for the Eastern District of Virginia consolidated nine cases, eight in which Malibu Media, LLC was the plaintiff and recommended that "all but the first Doe defendant in each of these matters be severed, and that the plaintiffs then be permitted to serve discovery on these remaining defendants' internet service providers to learn their identities." [pps. 3-4] In the same document, the Judge cites precedence from two earlier cases arguing against joinder (p. 7, ibid): that "the allegation that defendants used the same protocol on different days and times was insufficient" and that "the span of time covering the activity made the argument for joinder "unpersuasive."

**B. The person using a device connected to the internet at any given time is not necessarily the individual to whom an implicated Internet Protocol address (IP address) is registered.**

There are many circumstances in which the person to whom an Internet Protocol address may be registered is not the only person able to access the internet through that address. These are discussed at length in a Declaration (Case 2:12-cv-02084-MMB *Document 9*). A copy of this Declaration can be found here: http://ia600703.us.archive.org/16/items/gov.uscourts.paed.461509/gov.uscourts.paed.461509.9.0.pdf

The fact that the person to whom an IP address is registered may not be the only individual who can access the internet through that address, and the implications of this have been recognized previously by the courts. In Case 2:11-cv-03995, the Honorable Gary Brown noted that "it is no more likely that the subscriber to an IP address carried out a particular computer function - here the purported illegal downloading of a single pornographic film - than to say an individual who pays the telephone bill made a specific telephone call" [p. 6]

**C. A valid Media Access Control (MAC) address will often indicate only the wireless router connected to the internet and cannot be relied upon to determine who accessed the internet at any particular time.**

The identity of devices connected to the internet through an IP address is often limited to the first in a chain of devices. With the advent of the wireless router, often this will be the only device that can be identified. However, ownership of a wireless router, even a secured one, is not tantamount to being the only possible user of the device. Therefore, even the MAC address logged by the Internet Service Provider is of limited and possibly no value in determining who accessed the internet at a given moment or even what computer or other device was used to do so. This is discussed in more detail in the Declaration referenced in (2) above. This has explicitly been recognized in the courts by Judge Gary R. Brown who wrote in RE: BITTORRENT ADULT FILM COPYRIGHT INFRINGEMENT CASES (Case 2-11-cv-03995-DRH-GRB Document 39) that:

> unless the wireless router has been appropriately secured (and in some cases even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiffs film. As one court noted:
> In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connect to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router strength could be increased beyond 600 feet if

additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass the security using publicly available software. [p. 7, citations absent in the original]

**D. The inability to identify who actually accessed the internet through implicated IP and MAC addresses introduces an unacceptable degree or uncertainty with regard to the identification of actual wrongdoers.**

The TCYK LLC complaint and ex parte request for expedited discovery form yet another in a wave of suits in which copyright infringement plaintiffs seek to "tag" a defendant based solely on an IP address. However, an IP address is not equivalent to a person or entity. It is not a fingerprint or DNA evidence - indeed, far from it. In a remarkably similar case in which an adult entertainment content producer also sought expedited discovery to learn the identity of persons associated with IP addresses, United States District Judge Harold Baker of the Central District of Illinois denied a motion for expedited discovery and reconsideration, holding that, "IP subscribers are not necessarily copyright infringers...The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." Order of Apr. 29, 2011, VPR Internationale v. DOES 1-1017, (No. 2:11-cv-02068) (Central District of Illinois) (Judge Harold A. Baker)

The point so aptly made by Judge Baker is that there mayor may not be a correlation between the individual subscriber, the IP address, and the infringing activity. The risk of false identification by ISPs based on internet protocol addresses is vividly illustrated by Judge Baker when he describes a raid by federal agents on a home allegedly linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP (in the same fashion as Plaintiff seeks to extract such information from Charter Communications, Inc.) After the raid revealed no pornography on the family computers, federal agents eventually learned they raided the wrong home. The downloads of pornographic material were traced to a neighbor who had used multiple IP subscribers' Wi-Fi connections.

Finally, also writing in case 2: ll-cv-03995, Judge Brown described the litigation practices in cases where pre-service discovery is the basis for identifying putative defendants as "abusive" and went on to state:

Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for."
Patrick Collins, Inc. v. Does 1-3757,2011 U.S. Dist. LEXIS 128029, at *6-7 (N.D.Cal. Nov. 4, 2011).

## III. CONCLUSION

Wherefore I move to quash the subpoena issued to Charter Communications, Inc. to obtain John Doe No. 71's identity, and to sever John Doe No.71 from this action.


Respectfully submitted,


John Doe No.71
wijohndoe71@outlook.com
*Pro se*

Dated: July 10, 2013

## Certificate of Service

I, John Doe No. 71, hereby certify that on July 19, 2013, I forwarded a true and correct copy of Motion to Dismiss and/or Sever Complaint Against John Doe 71 and Quash Subpoena Against Same to Keith A. Vogt, Takiguchi & Vogt, 1500 West Carroll, Chicago, IL 60607 by United States first class mail.

John Doe No.71
wijohndoe71@outlook.com
*Pro se*

Dated: July 10, 2013